# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>A yellow 2017 Honda Fit with license plate 7YMZ386 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 8:23-MJ-00052

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(1)(B) | Interstate Stalking |
| 18 U.S.C. § 2261A(2)(B) | Cyberstalking |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days (*give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Kevin Corrigan, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Santa Ana, CA</u>

Hon. Autumn D. Spaeth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Jake Nare (ext. 3549)

**AFFIDAVIT**

I, Kevin Corrigan, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of an application to search a yellow 2017 Honda Fit with license plate 7YMZ386 belonging to Christopher AU-YOUNG (the "SUBJECT VEHICLE") located at Pacific Tow, 2840 East Coronado Street, Anaheim, California, which is further described in Attachment A.

2.   The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of interstate stalking, in violation of 18 U.S.C. § 2261A(1)(B), and cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B) (the "SUBJECT OFFENSES"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, as well as my conversations and analysis with other agents and officers who are familiar with interstate stalking and cyberstalking. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

1

## II.  BACKGROUND OF SPECIAL AGENT KEVIN CORRIGAN

4.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2015.  I am currently assigned to the Violent Crime Task Force of the Tampa Division of the FBI.  During my time as a Special Agent with the FBI, I have participated in violent crime investigations as the primary investigator or in a subsidiary role.  I am familiar with the procedures, activities, and investigative techniques associated with violent crime investigations, to include cases of online interstate threats and harassment, in violation of 18 U.S.C. §§ 875(c) and 2261A and interstate stalking, 18 U.S.C. § 2261A(1)(B), and cyberstalking, 18 U.S.C. § 2261A(2)(B). Prior to working with the FBI, I served as a Police Officer in Charleston, South Carolina, and an Assistant State Attorney in Orlando, Florida.

## III. STATEMENT OF PROBABLE CAUSE

**A.   Summary**

5.   On January 12, 2023, the FBI obtained a federal complaint in the Middle District of Florida, case no. 8:23-mj-1036-CPT.  The complaint charged AU-YOUNG with violations of interstate stalking (18 U.S.C. § 2261A(1)(B)) and cyberstalking, (18 U.S.C. § 2261A(2)(B)).

6.   Since in or around August of 2022, AU-YOUNG has engaged in a campaign of online and telephonic harassment and threats against Victim 1 and Victim 4.  Victim 1 resides in the Middle District of Florida, and Victim 4 resides in Visalia, California.  AU-YOUNG engaged in a course of conduct with the

2

intent to harass or intimidate the victims.  Specifically, AU-YOUNG cyberstalked, harassed, and threatened Victim 1 and Victim 4 by posting threatening and harassing videos on Facebook, YouTube, Vimeo, and Reddit.  AU-YOUNG also made repeated phone calls to and sent threatening voicemails and text messages to Victim 1 and Victim 4, which were transmitted in and affected interstate commerce.  In the course of harassing Victim 1, AU-YOUNG traveled in interstate commerce to intimidate and harass Victim 2, who is an immediate family member of Victim 1.  AU-YOUNG also harassed several other immediate family members of Victim 1, including Victim 3.

7.   On or about January 22, 2023, police officers from the Anaheim Police Department located and arrested AU-YOUNG while he was standing just outside of the TARGET VEHICLE, inside a parking garage in Fullerton, California.

8.   On or about January 23, 2023, after being advised of his Miranda rights and indicating that he understood, AU-YOUNG told FBI agents that his laptop computer was located inside the TARGET VEHICLE.

**B.   Victims 1 and 2**

9.   On or about January 3, 2023, the FBI interviewed Victim 1, who is an adult African American woman.  Victim 1 provided the information below.

10.   Victim 1 met AU-YOUNG in or around April 2022 and began a romantic relationship with him.  Victim 1 ended the relationship with AU-YOUNG in or around August 2022.  However, AU-YOUNG became enraged that Victim 1 broke up with him and

started harassing and threatening Victim 1 and her family through email, text messages, social media (Facebook, YouTube, Reddit, and Vimeo), U.S. mail, and food delivery services such as Door Dash.

11. AU-YOUNG posted videos about Victim 1 on YouTube, Facebook, Reddit and Vimeo. The videos contained threats against Victim 1 and her family, as well as offensive and untrue allegations about Victim 1. Victim 1 told the FBI that AU-YOUNG had posted approximately fifty videos about her. The videos were so offensive and threatening that many people complained and AU-YOUNG eventually removed most of them. Victim 1 tried to preserve some of the videos for evidence by taking screen captures of them. Victim 1 told FBI agents that in the videos, AU-YOUNG made statements such as, "I'm coming for you. I'm going to find you. Don't sleep at night. You're a cunt. You should die. How about I find your daughter and have fun with her too."

12. FBI agents received several clips of videos from YouTube that Victim 1 preserved. In the video clips, AU-YOUNG stated, "whatever time I have left on this pointless fucking planet I'm going to spend coming after you. I'm going to dismantle your life. I'm going to dismantle every part of your life."

13. FBI agents observed several videos posted on YouTube.com about Victim 1. The videos were between approximately 10 and 30 minutes in length and included offensive and racist rants about Victim 1, as well as false allegations

that Victim 1 was a sex offender who had committed multiple acts of sexual assault on a minor.  Some of the titles of these videos are listed below.

    FUCK YOU [Victim 1's name] (UNEDITED)!!!!!!!!!!!!!

    [Victim 1's name] IS A FAT LOSER B*TCH

    [Victim 1's name] USED TO LIVE IN HER CAR

    [Victim 1's name]: SEX OFFENDER

    [Victim 1's name] IS A HO, WHO*RE, SLU* JUST LIKE HER MOTHER

    [Victim 1's name]:  YET ANOTHER LOVELESS, BLACK WOMAN WHO CAN'T FIND LOVE

    FUCK YOU [Victim 1's name]

    14.  Victim 1 provided the FBI with a screenshot of a video that AU-YOUNG posted on YouTube.  The screenshot did not include a date, but Victim 1 believed AU-YOUNG posted the video in or around August or September 2022.  The screenshot displayed the captions generated by YouTube during the video.  The captions read as follows:

    "I'm still coming for you I swear to God  I may not have your phone number I may not have your email or anything like that because you changed it or you got off social media all that stuff but I swear to God I swear on my [_] grave I swear on the graves of my children I will come after you I promise that being said everyone have a nice day subscribe like comment all that stuff and peace out"

15.  Victim 1 showed FBI agents screenshots of content AU-YOUNG had posted on his Facebook page on or about November 20, 2022.  The screenshots displayed the following messages:

"I am going on a cross country road trip to tie up loose ends . . . I don't expect to come back afterwards though.  This is it."

"I hope you unalive V, if you're not already fuckin unalive."

16.  Victim 1 told FBI agents that Victim 4,[1] who met AU-YOUNG after Victim 1 and shared similar experiences with AU-YOUNG, warned Victim 1 about AU-YOUNG's messages regarding travel to harm Victim 1.  Victim 1 showed FBI agents screenshots of messages between Victim 1 and Victim 4.  The screenshots, dated November 20, 2022, showed the following messages:

Victim 4:    "He's said on Live he's travelling to you."

Victim 4:    "He's travelling to tie up loose ends."

Victim 4:    "Contact the authorities."

Victim 4:    "He says he's bringing weapons."

Victim 4:    "Sorry I didn't message you sooner."

17.  Victim 1 told the FBI that her daughter (hereinafter "Victim 2") received harassing text messages from AU-YOUNG about Victim 1.  Victim 1 showed FBI agents screenshots of messages Victim 2 received from AU-YOUNG.  The messages had no date associated with them, but Victim 1 believed she received them in

---

[1] This paragraph is also contained in the criminal complaint. *See United States v.* Christopher *Au-Young*, case no. 8:23-mj-1036-CPT ¶ 14.  Upon further review, I noticed paragraph 14 of the complaint incorrectly describes this communication as occurring between Victim 1 and Victim 3, instead of occurring between Victim 1 and Victim 4.

6

or around November 2022.  The text messages came from an unknown phone number.  Below are a few examples of the messages contained in the screenshots:

> "Tell your mom that I'm going to be in town in New York in a couple of weeks!"  "I look forward to seeing her soon hahaha (wink emoji)"
>
> "I'm gonna find out where she is"
>
> "And when I do it's gonna be awesome, not for her but for ME it will hahaha"

18.  Victim 1 told the FBI she tricked AU-YOUNG into thinking she lived in New York after she feared he would come to her residence in the Middle District of Florida.

19.  In or around December 2022, AU-YOUNG posted multiple videos indicating he was going to track down and harm Victim 2. On or about December 10, 2022, AU-YOUNG drove the TARGET VEHICLE from California to Illinois and showed up at a Victim 2's place of employment.

20.  During his trip from California to Illinois, AU-YOUNG published videos on Facebook Live indicating that he was going to find Victim 2.  Victim 2 received notification of the Facebook Live videos from Witness 1, who had viewed AU-YOUNG's videos online.

21.  Victim 1 provided the FBI with screenshots of the messages from Witness 1 to Victim 2 warning her of AU-YOUNG's videos.  FBI agents observed a Facebook message dated December 10, 2022, from Witness 1 to Victim 2.  The message read,

> "Hi I really need to contact you.  Your mom's ex-boyfriend
> is on his way to hurt you right now.
> https://youtu.be/RCUI3wpW_gs is a video he made being
> close to Carbondale.  He has many other videos about how
> he is on his way to hurt you.
> https://youtu.be/THZz088EIWM"

22.  FBI agents observed a Facebook message dated December 12, 2022, from Witness 1 to Victim 2.  The message had a photograph from inside a vehicle parked in the parking lot of Victim 2's place of employment.  The message read:

> "Girl this is NOT someone trying to troll you I am legit
> worried about you from this crazy son of a bitch.  He is
> in the parking lot waiting on you he posted this pic."

23.  Victim 1 told FBI agents that after she found out about AU-YOUNG's videos announcing his trip to Illinois, she contacted the local police, the FBI in Illinois, and employees at Victim 2's place of employment.  Victim 1 told FBI agents that local law enforcement officers caught AU-YOUNG hiding in the TARGET VEHICLE in the parking lot before being able to hurt Victim 2.

24.  FBI agents reviewed a police report from the Carbondale Police Department, which indicated that the police responded to Victim 2's place of employment on or about December 13, 2022, and on or about December 14, 2022.  According to the report, on or about December 14, 2022, Carbondale Police Department found AU-YOUNG in the back seat of the TARGET VEHICLE, parked in the parking lot where Victim 2 worked.  AU-

YOUNG told the police he was homeless and not doing anything wrong.  The police then escorted AU-YOUNG off the premises.

25.  Victim 1 told the FBI that AU-YOUNG called Victim 2's employer and said he had an interview with Victim 2.  Victim 1 provided a screenshot of the below message from Victim 2 to Victim 1, dated December 12, 2022:

> "He tried calling up here anonymous saying he had an interview with me that he'll be late. . . . My people lead saidddd uhhhhh"

26.  After the above incident in Illinois, AU-YOUNG continued to post threatening videos and continued to attempt to locate Victim 1.  In one video posted on or about December 27, 2022, AU-YOUNG posted a video offering to pay anyone $4,000 for information on Victim 1's address.  FBI agents observed this video still publicly available on YouTube.com.  In the video, AU-YOUNG repeatedly asked for specific information about where Victim 1 was residing and offered $4,000 to anyone who could successfully tell him where she lived.

27.  Victim 1 also stated she received multiple harassing emails from AU-YOUNG between in or around August and December 2022.  FBI agents reviewed screenshots of some of the emails Victim 1 received from AU-YOUNG.  The screenshots did not include a specific date, but contained the following messages:

> "THAT'S EXACTLY WHAT YOU FUCKING ARE.  A WHITE WORSHIPING
> HO.  I HAVE BEEN CALLING YOU THAT ON HERE FOR A BIT, AND
> YOU HAVE NEVER ONCE PROTESTED OR COMPLAINED ABOUT THAT.
> THAT'S WHY YOU DUMPED ME I BET!  BECAUSE YOU WANTED WHITE

COCK INSTEAD!  I GUARANTEE IF SOME WHITE DUDE APPROACHED
YOU ONLINE OR IN PERSON YOU WOULD SAY YES!  BECAUSE YOU'RE
A WHITE WORSHIPPING HO BAG!"

"AND FYI… I DID NOT GET MAD BECAUSE YOU WANTED TO BE LEFT
ALONE.  I GOT MAD BECAUSE YOU FUCKING DUMPED ME!!!!!!!!!"

"WHY DON'T YOU CRAWL BACK TO YOUR PSYCHO EX WHO HELD A
KNIFE TO YOUR STOMACH…CLEARLY YOU TWO GET ALONG BECAUSE
YOU'RE BOTH RETARDED ANIMALS WHO BELONG IN
CAGES!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!"

28.  Victim 1 told FBI agents the harassing and threatening
emails she received came from email addresses cauyoung@asu.edu
and jamiewu535@gmail.com.

29.  The FBI subpoenaed Google LLC for subscriber
information associated with the user of the account(s) that
posted videos to YouTube as described in paragraph 13 of this
affidavit, pursuant to an emergency disclosure request.  On or
about January 3, 2023, the FBI received subscriber records from
Google.  The records indicate the following:

Name:    SilverPictures77

Email:   cauyoung@asu.edu

Alternate Emails:  cauyoung@asu.edu, christopher.au-
young@asu.edu, christopher.au-young@email.asu.edu

Account Recovery:  cauyoung@asu.edu

Last Login:   January 2, 2023

Name:      AMBW Love Original Content Channel

Email:     jamiewu55@gmail.com

Last Login:     January 2, 2023

30.   Victim 1 told FBI agents that AU-YOUNG also harassed her by phone.  Victim 1 received approximately 20 to 30 voicemails from AU-YOUNG after breaking up with him.  The content of the voicemails was similar to the videos AU-YOUNG had posted online and she recognized the voice in the voicemails as AU-YOUNGS.  Victim 1 also said she received approximately two or three text messages every day from AU-YOUNG before she changed her phone number.  The text messages came from different numbers, but the content in the text messages was similar to all of AU-YOUNG's harassing messages.  Victim 1 received approximately 10 harassing phone calls per day.  Victim 1 told FBI agents she received harassing calls from AU-YOUNG from nine different phone numbers and that she recognized the voice as AU-YOUNG's on the calls that she answered.

31.   Victim 1 told FBI agents that her neighbors and family members received offensive mailings from AU-YOUNG.  Victim 1 sent FBI agents photographs of mail that Victim 1's son received from AU-YOUNG.  The photographs showed the following written statements:

> "[Victim 1's son's first name], SAY HI TO YOUR NIGGER FAMILY.  YOUR NIGGER…YOUR NIGGER HALF-SISTER.  TELL THEM I'M COMING FOR THEIR ASSESS.  TELL YOUR NIGGER MOM THAT SHE'S A FUCKING NI…"

11

> "ALSO, MADE ANOTHER VIDEO ABOUT YOUR MOM:
> https://www.youtuve.com/watch..."

## C.   Victim 3

32.   On or about January 4, 2023, FBI agents interviewed Victim 1's brother (hereinafter "Victim 3").  Victim 3 told FBI agents that AU-YOUNG sent letters threatening Victim 1 to him and his church.  AU-YOUNG also posted a YouTube video about him, which he did not watch.  Victim 3 received a recording device in the mail.  FBI Agents listened to the recorded messages on the device.  The messages appear to be of the voice of AU-YOUNG and contained offensive and threatening language towards Victim 1, Victim 2, and Victim 3.  In one of the recordings, AU-YOUNG stated that he is the sender of the letters that Victim 3 received.  Victim 3 contacted the police after he started receiving mysterious Door Dash deliveries in or around September and October 2022.  Victim 3 did not order the Door Dash deliveries although the deliveries specifically referenced Victim 3's name.  In or around November 2022, strangers started knocking on Victim 3's door asking for him and his wife by name.  Below is an excerpt from the letter sent to Victim 3's church:

> "Minister [Victim 3's name]. . . tell your sister/sister in
> law, [Victim 1], that I'm coming for her and her children.
> These are not empty threats, I intend to carry them out. .
> . . she WILL NEVER GET RID OF ME. I will never let her find
> peace or happiness, as long as I AM BREATHING!

**D.   Victim 4**

33.   FBI agents interviewed Victim 4 an African American adult female.  Victim 4 told FBI Agents that AU-YOUNG contacted her on Facebook requesting to interview her about interracial dating.  Victim 4 agreed and conducted an interview with AU-YOUNG on his YouTube channel AMBW (Asian Men Black Women).  Victim 4 later went out on a date with AU-YOUNG but immediately noticed that something seemed off about him, so she attempted to end the relationship with him.  However, after attempting to end the relationship, AU-YOUNG started harassing and stalking her.

34.   AU-YOUNG posted four videos about Victim 4 on YouTube.  The videos were offensive and degrading and published Victim 4's personal information such as her residence, which she never gave to AU-YOUNG.  Victim 4 received multiple calls per day from AU-YOUNG from various random phone numbers. When Victim 4 answered the phone, AU-YOUNG made threating statements such as, "I'll be seeing you soon."  Victim 4 recognized AU-YOUNG's voice in the calls.  Victim 4 also received harassing and threatening voicemails and text messages.  Victim 4 recognized the voice as AU-YOUNG's in the voicemails.  The text messages Victim 4 received contained similar content to what was said in the posted videos, voicemails, and phone calls.

35.   On at least three occasions in or around October and November 2022, AU-YOUNG arrived at Victim 4's home uninvited and unannounced.  Victim 4 had been outside of her residence smoking a cigarette at approximately 3:00 a.m. and saw AU-YOUNG in the TARGET VEHICLE.  As soon as she spotted him, he drove off.

Victim 4 filed a police report documenting each of the three incidents and is in the process of seeking a protective order from AU-YOUNG (the injunction hearing is pending).  Victim 4 has been forced to move to a new residence to hide from AU-YOUNG.

36.  Victim 4 told FBI agents that AU-YOUNG created the AMBW (Asian Men Black Women) YouTube channel to victimize black women.  Victim 4 told FBI agents that AU-YOUNG has stalked other African American women.

37.  Additionally, Victim 4 told FBI agents that she observed violent and disturbing videos on AU-YOUNG's YouTube channel.  Specifically, Victim 4 observed AU-YOUNG stating that he is inspired by Dylan Roof because "the people had it coming." In his videos, AU-YOUNG bragged about having access to firearms. AU-YOUNG said that he could take people out because he had access to drugs such as anesthesia because he knows a dentist.

38.  Both Victim 1 and Victim 4 recognized AU-YOUNG in the aforementioned videos by face and voice because they have met him in person.  In the communications that only contain audio, Victim 1 and Victim 4 recognize AU-YOUNG by his voice.

39.  FBI agents identified AU-YOUNG in the videos by his California driver's license photo.  The individual in the videos appeared to be the same person.

40.  Victim 1 and Victim 4 told the FBI that "Francios Chu" is an online persona that AU-YOUNG utilizes along with a Facebook account in the same name (hereinafter "the Facebook account").  Victim 1 and Victim 4 have previously communicated with AU-YOUNG through the Facebook account.

14

41.   FBI agents reviewed the publicly available data displayed on the Facebook account.   The Facebook account displays the moniker "Francios Chu" and displays a photo of AU-YOUNG as the profile picture.   Multiple photos of AU-YOUNG are also displayed under the profile photos section of the Facebook account.

42.   On or about January 11, 2023, FBI agents observed a public post on the Facebook account.   The public post read, "This one's for all the women out there https://youtu.be/n3JflkGRpw4."   The post contained a link to a YouTube video entitled, "MY BAD DATING EXPERIENCES AND WHAT I'VE LEARNED ABOUT WOMEN."   FBI agents viewed the video, which contained a still photo of AU-YOUNG and approximately fifteen minutes of AU-YOUNG speaking.   In the video, AU-YOUNG mentions Victim 1 by her name multiple times.   The video consists of AU-YOUNG lamenting about his poor experiences dating women and several offensive statements about Victim 1.

43.   On or about January 12, 2023, FBI agents observed a Facebook Live video posted on the Facebook account.   The Facebook Live video was approximately 25 minutes in length and consisted of AU-YOUNG filming from inside the TARGET VEHICLE. In the video, AU-YOUNG mentioned Victim 1 by name, made several offensive statements about Victim 1, and again lamented about his poor dating experiences.   AU-YOUNG made various suicidal statements in the Facebook Live video and said that he was currently living inside the TARGET VEHICLE.

44.   FBI agents have observed several YouTube videos displaying both video and audio of AU-YOUNG.   In the aforementioned January 12, 2023, Facebook Live video and the January 11, 2023, YouTube video, FBI agents recognized the voice as belonging to AU-YOUNG.

45.   On or about January 20, 2023, FBI agents observed a post on the Facebook account indicating that AU-YOUNG was currently located in Carbondale, Illinois— the same town where AU-YOUNG had been caught stalking Victim 2 in or around December 2022.

**E.   Identifying the TARGET VEHICLE**

46.   Victim 1 and Victim 4 both told FBI agents that AU-YOUNG filmed many of his videos from inside TARGET VEHICLE, that he lived inside the TARGET VEHICLE, and that he stored his electronic devices, including his laptop computer within the TARGET VEHICLE.

47.   On or about January 9, 2023, Victim 1 told FBI agents that when she visited AU-YOUNG in or around May, June, and July of 2022, she travelled with AU-YOUNG inside the TARGET VEHICLE. According to Victim 1, it appeared AU-YOUNG was living in the TARGET VEHICLE.   The TARGET VEHICLE appeared to contain many of AU-YOUNG's personal belongings.   Victim 1 also told FBI agents that she had watched many of AU-YOUNG's threatening and harassing videos and could see that at least some of them had been filmed from inside TARGET VEHICLE.   Victim 1 also observed AU-YOUNG utilize a laptop computer to record many of his YouTube videos.

48.  On or about January 4, 2023, Victim 4 told FBI agents that she observed numerous YouTube videos posted by AU-YOUNG in which he was recording from inside the TARGET VEHICLE.  In the videos seen by Victim 4, AU-YOUNG made statements indicating that he was filming from inside his vehicle.  Victim 4 also heard AU-YOUNG say that he stored all the videos he made on his laptop computer.  Victim 4 has also seen AU-YOUNG driving the TARGET VEHICLE numerous times, to include the times he stalked Victim 4 at her residence in or around September and August of 2022.

49.  As indicated in paragraph 29, AU-YOUNG was questioned by the Carbondale Police Department after he was found sitting inside the back seat of the TARGET VEHICLE at Victim 2's place of employment on or about December 14, 2022.

50.  California State Department of Motor Vehicles records indicate that the TARGET VEHICLE is registered to AU-YOUNG and bears the license plate 7YMZ386.

51.  FBI agents observed photographs from various license plate reader machines located around the city of Anaheim, California.  The photographs were dated on or about January 1, 2023, and January 4, 2023.  Photographs from the license plate readers show the license plate 7YMZ386 attached to the TARGET VEHICLE, a yellow Honda Fit.

52.  On or about January 12, 2023, FBI agents observed a video posted on Facebook Live by AU-YOUNG.  The video was posted from the Facebook account and FBI agents recognized AU-YOUNG's voice in the video.  In the video AU-YOUNG was laying in the

back seat of the TARGET VEHICLE and he stated that he was
currently living inside the TARGET VEHICLE.  While recording the
video from inside his vehicle, a phone rang in the background,
indicating that AU-YOUNG was likely recording the video from a
device other than a cell phone.

53.  On or about January 22, 2023, police officers from the
Anaheim Police Department located and arrested AU-YOUNG while he
was standing just outside of the TARGET VEHICLE, inside a
parking garage located at 230 Chapman Ave, Fullerton,
California.  After the arrest, the TARGET VEHICLE was towed to
2840 East Coronado Street, Anaheim, California.

54.  On or about January 23, 2023, after being advised of
his Miranda rights and indicating that he understood, AU-YOUNG
told FBI agents that his laptop computer was located inside the
TARGET VEHICLE.  AU-YOUNG also told FBI agents that he lived
inside the TARGET VEHICLE and that all his belongings were
inside the TARGET VEHICLE.

## IV. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[2]

55.  Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I

---

[2] As used herein, the term "digital device" includes any
electronic system or device capable of storing or processing
data in digital form, including central processing units;
desktop, laptop, notebook, and tablet computers; personal
digital assistants; wireless communication devices, such as
paging devices, mobile telephones, and smart phones; digital
cameras; gaming consoles; peripheral input/output devices, such
as keyboards, printers, scanners, monitors, and drives; related
communications devices, such as modems, routers, cables, and
connections; storage media; and security devices.

know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

19

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

56.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

57.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

### V.  **CONCLUSION**

58.  Based on the above information, probable cause exists that the TARGET VEHICLE, as fully described in Attachment A, contains evidence, fruits, and/or instrumentalities of violations of interstate stalking, in violation of 18 U.S.C. § 2261A(1)(B), and cyberstalking, in violation of 18 U.S.C. § 2261A(2)(b).  Accordingly, I respectfully request a warrant to search the TARGET VEHICLE and seize the items listed in Attachment B.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
January, 2023.


_____
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

<u>PREMISES TO BE SEARCHED</u>

A yellow 2017 Honda Fit with license plate 7YMZ386 belonging to Christopher AU-YOUNG, located at Pacific Tow, 2840 East Coronado Street, Anaheim, California.

**ATTACHMENT B**

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of interstate stalking, 18 U.S.C. § 2261A(1)(B), and cyberstalking, 18 U.S.C. § 2261A(2)(B) (the "SUBJECT OFFENSES") namely:

a.   Records, documents, programs, applications, or materials related to Victims 1 through 4 (hereinafter, the "victims");

b.   Records, documents, programs, applications, or materials reflecting communications or correspondence with or about the victims or any friends, relatives or associates of the victims;

c.   Records, documents, programs, applications or materials that identify the use of social media accounts by AU-YOUNG;

d.   Records, documents, programs, applications, or materials, including receipts, demonstrating the manner in which AU-YOUNG obtained information about the victims;

e.   Records, documents, programs, applications, or materials containing words and phrases similar to those used in text, e-mail, and online messages sent to the victims;

f.   Photographs or videos of the victims;

g.   Contents of any calendar or date book from August 1, 2022, thru the present;

h.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages,

i

regarding ownership and/or possession of a yellow 2017 Honda Fit with license plate 7YMZ386 (the "SUBJECT VEHICLE");

  i. Records, documents, programs, applications, or materials reflecting telephone and internet service providers used by AU-YOUNG;

  j. Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offense/s, and forensic copies thereof.

  k. With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

   i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted;

   ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   iii. evidence of the attachment of other devices;

   iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

   v. evidence of the times the device was used;

   vi. applications, programs, software, documentation, manuals, passwords, keys, and other access devices that may be necessary to access the device or data

stored on the device, to run software contained on the device, or to conduct a forensic examination of the device;

          vii. records of or information about Internet Protocol addresses used by the device.

    2. As used herein, the terms "records," "information," "documents," "programs," "applications," and "materials" include records, information, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

    3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

II. <u>SEARCH PROCEDURE FOR DIGITAL DEVICES</u>

4.    In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

b.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the scope of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of items to be seized.

iv

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase," "Griffeye," and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

c.   The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

d.   If the search determines that a digital device does not contain any data falling within the scope of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e.   If the search determines that a digital device does contain data falling within the scope of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the scope of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

v

g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.